# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

| | | |
|---|---|---|
| DWAYNE SIMS, | : | Case No. 2:22-cv-4357 |
| Plaintiff, | : | |
| vs. | : | District Judge James L. Graham |
| | : | Magistrate Judge Kimberly A. Jolson |
| DEPARTMENT OF REHABILITATION AND CORRECTION, *et al.*, | : | |
| Defendants. | : | |

# ORDER AND
# REPORT AND RECOMMENDATION

Plaintiff, an inmate currently incarcerated at the Toledo Correctional Institution, in Toledo, Ohio, brings this *pro se* action under 42 U.S.C. § 1983 alleging violations of his constitutional rights while he was housed at Ross Correctional Institution ("RCI"), in Chillicothe, Ohio. In an amended complaint, Plaintiff names various RCI officials as defendants. (*See* Doc. 6).[1] By separate order, Plaintiff has been granted leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915.

This matter is now before the Court for a *sua sponte* review of Plaintiff's amended complaint (Doc. 6) to determine whether the complaint, or any portion of it, should be dismissed because it is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief. *See* Prison Litigation Reform

---

[1] In a separate Order, the Court granted Plaintiff leave to file the amended complaint pursuant to Federal Rule of Civil Procedure 15(a). The amended complaint (Doc. 6) supersedes the original complaint, as amended (*see* Docs. 1-1; 2), and is the operative complaint in this matter. *See Calhoun v. Bergh*, 769 F.3d 409, 410 (6th Cir. 2014) ("An amended complaint supersedes an earlier complaint for all purposes.") (quotation and citation omitted).

Act of 1995 § 804, 28 U.S.C. § 1915(e)(2)(B); § 805, 28 U.S.C. § 1915A(b).

### Screening of Plaintiff's Amended Complaint

**A.      Legal Standard**

In enacting the original *in forma pauperis* statute, Congress recognized that a "litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits." *Denton v. Hernandez,* 504 U.S. 25, 31 (1992) (quoting *Neitzke v. Williams,* 490 U.S. 319, 324 (1989)). To prevent such abusive litigation, Congress has authorized federal courts to dismiss an *in forma pauperis* complaint if they are satisfied that the action is frivolous or malicious. *Id.*; *see also* 28 U.S.C. §§ 1915(e)(2)(B)(i) and 1915A(b)(1). A complaint may be dismissed as frivolous when the plaintiff cannot make any claim with a rational or arguable basis in fact or law. *Neitzke v. Williams,* 490 U.S. 319, 328-29 (1989); *see also Lawler v. Marshall*, 898 F.2d 1196, 1198 (6th Cir. 1990). An action has no arguable legal basis when the defendant is immune from suit or when the plaintiff claims a violation of a legal interest which clearly does not exist. *Neitzke,* 490 U.S. at 327. An action has no arguable factual basis when the allegations are delusional or rise to the level of the irrational or "wholly incredible." *Denton,* 504 U.S. at 32; *Lawler,* 898 F.2d at 1199. The Court need not accept as true factual allegations that are "fantastic or delusional" in reviewing a complaint for frivolousness. *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010) (quoting *Neitzke*, 490 U.S. at 328).

Congress also has authorized the *sua sponte* dismissal of complaints that fail to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915 (e)(2)(B)(ii) and 1915A(b)(1). A complaint filed by a *pro se* plaintiff must be "liberally construed" and "held to less stringent

2

standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)). By the same token, however, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Hill*, 630 F.3d at 470-71 ("dismissal standard articulated in *Iqbal* and *Twombly* governs dismissals for failure to state a claim" under §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Court must accept all well-pleaded factual allegations as true, but need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Although a complaint need not contain "detailed factual allegations," it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557. The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson*, 551 U.S. at 93 (citations omitted).

B. **Allegations in the Amended Complaint**

Plaintiff alleges that on October 9, 2021, at around 10:30 a.m., he was awakened to go with Defendant Correctional Officer Beavers to the Captain's office for a phone call from home

regarding the death of Plaintiff's brother. (Doc. 6, at PageID 57). Plaintiff alleges that when he arrived at the Captain's office, Defendants Captain Forley (alternatively spelled in the amended complaint as "Fhorley" and "Furhley"), Lieutenant Crabtree, Major-Chief of Security John Doe, and Lieutenant Lindsy (alternatively spelled in the amended complaint as "Lindsey") were already there. (*Id.*). According to Plaintiff, after being on the phone for about ten minutes and receiving the news about his brother, the Major told him to hang up the phone. (*Id.*). Plaintiff alleges that he looked at the Major without saying anything and hung up the phone. Thereafter, the Major allegedly told Plaintiff, "You should thank me for that phone call. I didn't have to give you nothing." (*Id.*). Plaintiff alleges that he looked at the Major and said, "I don't have to thank you for shit"; turned with his hands cuffed behind his back, and walked out. (Doc. 6, at PageID 57). Plaintiff alleges that, at the instruction of the Major, Defendants Beavers and Lindsy grabbed Plaintiff. (*Id.*). Plaintiff alleges that the Major then put on gloves, choked, slapped, and punched Plaintiff in the face. (*Id.*). Plaintiff also alleges that the Major threatened him not to say anything and told him that there were no working cameras in the Captain's office. (*Id.*).

Plaintiff alleges that on the way out he tried to break free and was tackled in the yard. (Doc. 6, at PageID 57-58). Plaintiff says he was then taken to medical and reported that he had been assaulted. (*Id.* at PageID 58).

Plaintiff alleges that about five days later the Major came to his housing unit, pulled him out of the "Rec. Cage," took him upstairs to a porter's closet, and again threatened him not to say anything. (Doc. 6, at PageID 58). Plaintiff alleges that he filed a grievance and, when he asked why the response was delayed, was immediately transferred to Ohio State Penitentiary ("OSP")— a Level Four prison. (*Id.*). Plaintiff alleges that when he checked on the status of his RCI

4

grievance, he learned that the grievance and an appeal had been denied. Plaintiff alleges, however, that he was never given a chance to file an appeal. (*Id.*). Plaintiff also alleges that the inspector indicated that the only available video footage was of Plaintiff being tackled in the yard. (*Id.*). Plaintiff asserts that if there was footage of him in the yard then there would also have been footage of him in the Captain's office. (*Id.*). Plaintiff asserts that cameras are required per prison policy. (*Id.*). Plaintiff also alleges that the use of force was not reported. (*Id.*).

Plaintiff seeks monetary, injunctive, and declaratory relief. (Doc. 6, at PageID 59).

**C.      Analysis of the Amended Complaint**

Based on the above allegations, Plaintiff asserts that he is bringing claims for violations of his rights under the Eighth Amendment and his right to due process. (*See* Doc. 6, at PageID 58–59). Plaintiff also appears to allege a First Amendment retaliation claim. (*See id.*).

At this stage in the proceedings, without the benefit of briefing by the parties to this action, the undersigned concludes that Plaintiff's Eighth Amendment excessive-force claim against Defendant Major-Chief of Security John Doe, in his individual capacity, for allegedly choking, slapping, and punching plaintiff; and Plaintiff's Eighth Amendment claims against defendants Forley, Lindsy, Crabtree, and Beavers, in their individual capacities, for failing to intervene to protect plaintiff from defendant Major-Chief of Security John Doe's alleged use of excessive force, are deserving of further development and may proceed at this juncture. *See* 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b). However, Plaintiff's remaining allegations should be dismissed for failure to state a claim upon which relief can be granted.

First, to the extent that Plaintiff seeks to include the Ohio Department of Rehabilitation and Correction ("ODRC") as a Defendant in the amended complaint, the ODRC is not a proper

defendant in this action.[2] The ODRC, as a state agency, is absolutely immune from suit in this Court by virtue of the Eleventh Amendment to the United States Constitution. *See Regents of Univ. of Calif. v. Doe*, 519 U.S. 425, 429 (1997) (holding Eleventh Amendment sovereign immunity applies to "state agents and instrumentalities"); *Tackett v. Ohio Dep't of Rehab. & Corr.*, No. 2:10-cv-979, 2011 WL 5076401, at *3 (S.D. Ohio Oct. 25, 2011) ("ODRC is a state agency and therefore enjoys Ohio's sovereign immunity."). Moreover, a state agency is not a "person" subject to suit under 42 U.S.C. § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70–71 (1989). Accordingly, the ODRC must be dismissed.

Next, Plaintiff's claims against any individual Defendant in an official capacity must be dismissed to the extent that plaintiff seeks monetary damages. Absent an express waiver, a state is immune from damage suits under the Eleventh Amendment. *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy*, 506 U.S. 139, 144 (1993); *Edelman v. Jordan*, 415 U.S. 651, 673 (1974). The State of Ohio has not constitutionally nor statutorily waived its Eleventh Amendment immunity in the federal courts. *See Johns v. Supreme Court of Ohio*, 753 F.2d 524, 527 (6th Cir. 1985); *State of Ohio v. Madeline Marie Nursing Homes*, 694 F.2d 449, 460-62 (6th Cir. 1982). The Eleventh Amendment bar extends to actions where the state is not a named party, but where the action is essentially one for the recovery of money from the state. *Edelman*, 415 U.S. at 663; *Ford Motor Company v. Dep't. of Treasury*, 323 U.S. 459, 464 (1945). A suit against a defendant in his or her official capacity would, in reality, be a way of pleading the action against the entity of which defendants are agents. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978). Thus, actions against state officials in their official capacities are included in this bar. *Will v. Michigan Dept. of*

---

[2] The ODRC was named as a Defendant in Plaintiff's initial complaint (Doc. 1-1).

*State Police*, 491 U.S. 58, 70-71 (1989); *Scheuer v. Rhodes*, 416 U.S. 232 (1974). *See also Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010) (citing *Cady v. Arenac Co.*, 574 F.3d 334, 344 (6th Cir. 2009) ("[A]n official-capacity suit against a state official is deemed to be a suit against the state and is thus barred by the Eleventh Amendment, absent a waiver." (citation and ellipsis omitted)). Therefore, the individual Defendants are immune from suit in their official capacities to the extent that Plaintiff seeks monetary damages.

Furthermore, Plaintiff's claims for declaratory and injunctive relief are moot because he is no longer incarcerated at RCI, where the alleged unconstitutional actions occurred. *Parks v. Reans*, 510 F. App'x 414, 415 (6th Cir. 2013) ("A prisoner's request for injunctive and declaratory relief is moot upon his transfer to a different facility.") (citing *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996)).

Plaintiff has also failed to state a claim that his transfer to OSP was retaliatory. A prisoner's claim of retaliation for engaging in protected conduct is grounded in the First Amendment. *Jones v. Caruso*, 421 F. App'x 550, 553 (6th Cir. 2011) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999) (en banc)). A retaliation claim has three elements: (1) the prisoner engaged in protected conduct; (2) an adverse action was taken against the prisoner that "'would deter a [prisoner] of ordinary firmness from continuing to engage in that conduct'"; and (3) the prisoner's protected conduct, at least in part, motivated the adverse action. *Id.* (quoting *Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007), in turn quoting *Thaddeus-X*, 175 F.3d at 394).

In this case, Plaintiff suggests that unspecified officials transferred him as a punishment for using the grievance process at RCI. Plaintiff has not, however, alleged sufficient facts to plausibly suggest a causal connection between his transfer and protected activity. The mere

7

allegation that Plaintiff inquired on the status of his grievance prior to being transferred is insufficient to plausibly suggest that his transfer was the result of retaliation. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)). *See also Murray v. Unknown Evert,* 84 F. App'x 553, 556 (6th Cir. 2003) (affirming dismissal of retaliation claim under § 1915A because "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted). Without any "further factual enhancement," Plaintiff's conclusory allegations are simply insufficient to state an actionable claim for relief. *Twombly*, 550 U.S. at 557. *See also Whiteside v. Collins,* No. 2:08-cv-875, 2009 WL 4281443, at *9 (S.D. Ohio Nov. 24, 2009) (finding the plaintiff's retaliation claim was subject to dismissal, noting that "conclusory allegations of retaliatory motive and temporal proximity alone are insufficient to establish his retaliation claim") (Report and Recommendation), *adopted*, 2010 WL 1032424 (S.D. Ohio Mar. 17, 2010).

Moreover, a prisoner has "no constitutional right to remain incarcerated at a particular prison or to be held in a specific security classification." *Harbin-Bey v. Rutter*, 420 F.3d 571, 577 (6th Cir. 2005). The Supreme Court has held that the Constitution does not give rise to a liberty interest in avoiding transfer from a "low-to maximum-security prison because '[c]onfinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose.'" *Wilkinson v. Austin*, 545 U.S. 209, 221-22 (2005) (quoting *Meachum v. Fano*, 427 U.S. 215, 225 (1976)). A liberty interest may be implicated when a transfer or change in classification imposes an "atypical and significant hardship on the inmate in relation

8

to the ordinary incidents of prison life." *Id.* at 223 (quoting *Sandin v. Connor*, 515 U.S. 472, 484 (1995)). But the mere fact that an inmate is transferred to another prison or receives an increase in security classification does not amount to an atypical and significant hardship because prisoners have "no constitutional right to remain incarcerated in a particular prison or to be held in a specific security classification." *Harbin-Bey*, 420 F.3d at 577; *see also Johnson v. Mohr,* No. 2:15cv86, 2015 WL 1526804, at *2 (S.D. Ohio Apr. 3, 2015) (Graham, J.); *Lawson v. Haddon*, No. 1:09cv551, 2009 WL 2242692, at *4 (W.D. Mich. July 16, 2009) (and cases cited therein). Plaintiff does not allege that he was subjected to "atypical and significant hardship" at OSP. His claims regarding his transfer and placement should also be dismissed on this ground.

Additionally, Plaintiff fails to state a claim upon which relief can be granted to the extent that he seeks to hold defendants liable for violations of prison policy regarding cameras. *See Hursey v. Anderson*, No. 16-1146, 2017 WL 3528206, at *2 (6th Cir. Mar. 31, 2017) ("claims related to violations of prison policies do not state a constitutional violation").

Nor has Plaintiff stated a claim upon which relief can be granted to the extent he alleges that defendant Major-Chief of Security John Doe used threatening language toward him. Courts have consistently held that "[v]erbal harassment or idle threats by a state actor do not create a constitutional violation and are insufficient to support a section 1983 claim for relief." *Wingo v. Tennessee Dep't of Corr.,* 499 F. App'x 453, 455 (6th Cir. 2012) (citing *Ivey v. Wilson,* 832 F.2d 950, 955 (6th Cir. 1987)); *see also Chilcott v. Erie Cty. Domestic Relations,* 283 F. App'x 8, 11 (3rd Cir. 2008) (and Sixth, Fifth and Tenth Circuit cases cited therein).

Finally, Plaintiff's complaints regarding the handling of his grievance fail to implicate federal constitutional concerns because Plaintiff has no right under the Constitution to an effective

9

prison grievance procedure. *See, e.g., Hill v. Warden, S. Ohio Corr. Facility,* No. 1:12cv63, 2012 WL 1639991, at *2 (S.D. Ohio Mar. 13, 2012) (Report & Recommendation) (recommending dismissal of portion of complaint complaining about "the failure of prison staff to provide [plaintiff] with inmate grievance forms and other deficiencies in the inmate grievance procedure" because "plaintiff has no federal constitutional right to an effective prison grievance procedure"), *adopted,* 2012 WL 1623565 (S.D. Ohio May 9, 2012); *Dearing v. Mahalma,* No. 1:11cv204, 2011 WL 3739029, at *7 (S.D. Ohio Aug. 24, 2011) (holding that the plaintiff's allegations referring to "his dissatisfaction with the . . . investigation of [an] allegedly mishandled letter" through the prison grievance process did not state an actionable claim under 42 U.S.C. § 1983); *Williams v. Harris,* No. 1:11cv362, 2011 WL 3667438, at *3 (S.D. Ohio June 15, 2011) (Report & Recommendation) (recommending dismissal of complaint against prison official responsible for responding to institutional grievances because the plaintiff had "no constitutional right to an effective grievance procedure"), *adopted,* 2011 WL 3667389 (S.D. Ohio Aug. 22, 2011); *see also Walker v. Michigan Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir.2005) (per curiam) (and cases cited therein); *Argue v. Hofineyer,* 80 F. App'x 427, 430 (6th Cir.2003) (and cases cited therein); *Overholt v. Unibase Data Entry, Inc.,* No. 98–3302, 2000 WL 799760, at *3 (6th Cir. June 14, 2000).

Accordingly, in sum, the amended complaint (Doc. 6) should be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1) **with the exception of** Plaintiff's Eighth Amendment excessive-force claim against Defendant Major-Chief of Security John Doe, in his individual capacity, for allegedly choking, slapping, and punching Plaintiff; and Plaintiff's Eighth Amendment claims against Defendants Forley, Lindsy, Crabtree, and Beavers, in their individual

capacities, for failing to intervene to protect Plaintiff from Defendant Major-Chief of Security John Doe's alleged use of excessive force.

However, Plaintiff has failed to provide service copies of the amended complaint or completed summons and U.S. Marshal forms for service of process. It is therefore **ORDERED** that plaintiff, **within thirty (30) days** of the date of this Order, submit a service copy of the amended complaint (Doc. 6) and a completed summons and U.S. Marshal form for each of Defendants Forley, Lindsy, Crabtree, and Beavers. Plaintiff is advised that failure to comply with this Order may result in the dismissal of this action for want of prosecution. Before service may be issued upon the remaining John Doe Defendant, Plaintiff must file a motion to issue service setting forth the identity of the unidentified Defendant.

## IT IS THEREFORE RECOMMENDED THAT:

1. The amended complaint (Doc. 6) be **DISMISSED with prejudice** pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1), **with the exception of** Plaintiff's Eighth Amendment excessive-force claim against Defendant Major-Chief of Security John Doe, in his individual capacity, for allegedly choking, slapping, and punching plaintiff; and Plaintiff's Eighth Amendment claims against Defendants Forley, Lindsy, Crabtree, and Beavers, in their individual capacities, for failing to intervene to protect plaintiff from Defendant Major-Chief of Security John Doe's alleged use of excessive force.

## IT IS THEREFORE ORDERED THAT:

1. Within **thirty (30) days** of receipt of this Order, plaintiff is **ORDERED** to submit a service copy of the amended complaint and a completed summons and United States Marshal form for each of Defendants Forley, Lindsy, Crabtree, and Beavers.

2. The **Clerk of Court** is **DIRECTED** to provide plaintiff with a copy of the amended complaint (Doc. 6), a summons form, and a United States Marshal form for this purpose. Upon receipt of service copies and completed summons and United States Marshal forms, the Court **ORDERS** service of process by the United States Marshal in this case as directed by plaintiff.

Before service may be issued upon the remaining John Doe Defendant, plaintiff must file a motion to issue service setting forth the identity of the unidentified Defendant. Plaintiff is therefore **ORDERED** to file a motion to issue service, including a service copy of the amended complaint, and a completed United States Marshal and summons form, if and when Plaintiff discovers the identity of the unnamed Defendant through discovery. Plaintiff is advised that no service will be issued on the unnamed Defendant unless Plaintiff complies with this Order.

3. Plaintiff shall serve upon Defendants or, if appearance has been entered by counsel, upon Defendants' attorney(s), a copy of every further pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed with the clerk of court a certificate stating the date a true and correct copy of any document was mailed to Defendant or counsel. Any paper received by a district judge or magistrate judge which has not been filed with the clerk or which fails to include a certificate of service will be disregarded by the court.

4. Plaintiff shall inform the Court promptly of any changes in his address which may occur during the pendency of this lawsuit.

## PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and

Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g., Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to the magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted).

Date: March 16, 2023                                   /s/ Kimberly A. Jolson
                                                                              KIMBERLY A. JOLSON
                                                                              UNITED STATES MAGISTRATE JUDGE