**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**DWAYNE SIMS,**

**Plaintiff,**

**Civil Action 2:22-cv-4357**
**v.**          **Judge James L. Graham**
**Magistrate Judge Kimberly A. Jolson**

**DEPARTMENT OF REHABILITATION
AND CORRECTIONS, et al.,**
         **Defendants.**

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants' Motion for Summary Judgment (Doc. 39), Plaintiff's Motion for an Order to Compel Discovery (Doc. 42), Plaintiff's Motion for Summary Judgment (Doc. 50), and Defendants' Amended Motion for Summary Judgment (Doc. 60). For the following reasons, the Undersigned **RECOMMENDS DENYING** Plaintiff's Motion for Summary Judgment (Doc. 50) and **GRANTING** Defendants' Amended Motion for Summary Judgment (Doc. 60). Because Defendants' Amended Motion supersedes their original Motion for Summary Judgment, the Undersigned **DENIES** the original Motion as **MOOT**. (Doc. 39). And because the parties resolved their prior discovery dispute, Plaintiff's Motion for an Order to Compel Discovery (Doc. 42) is **TERMINATED**.

## I.      BACKGROUND

Plaintiff, proceeding *pro se*, is a prisoner currently incarcerated at Toledo Correctional Institution. He alleges that Defendants, current and former employees at Ross Correctional Institution (RCI), violated his constitutional rights when he was housed there in 2021. (*See* Doc. 6 at 4). Plaintiff's allegations surround when he learned of his brother's death. He says that on

October 9, 2021, around 10:30 AM, he was taken to a prison official's office for a phone call. (*Id.* at 5). Defendant Beavers allegedly escorted Plaintiff to the office for that call. (*Id.*). Plaintiff was on the phone for a bit without incident. But then Plaintiff alleges that Defendant Joseph became "rude," and the two of them exchanged heated words.

Plaintiff says he attempted to leave the office, but Defendant Joseph directed Defendants Beavers and Lindsey to grab him. (*Id.*). Then, Defendant Joseph put on black gloves and proceeded to choke, slap, and punch him. (*Id.*). Defendant Joseph told him that the office had no cameras and warned Plaintiff to stay quiet. (*Id.*). Plaintiff also says that Defendants Crabtree, Lindsey, Farley, and Beavers were there but did not intervene. (*Id.* at 6). Next, Plaintiff says he was escorted out of the office, but he tried to break free of the officers and run. (*Id.* at 5–6). At that point, Defendants tackled him and took him to the infirmary. (*Id.* at 6). During that medical visit, Plaintiff says he reported the assault. (*Id.*). About five days later, Defendant Joseph took him into a porter closet and threatened Plaintiff not to discuss the prior incident. (*Id.*).

Defendants tell a different story. They say that Defendant Lindsey gave Plaintiff the death notice phone call about his brother. And, after the call, Plaintiff ran away from Defendants Lindsey and Beavers. (*Id.*). Then, Plaintiff fell to the ground. (*Id.*). Defendant Lindsey helped Plaintiff to his feet, briefly took him to a holding cage, and escorted him to a medical examination. (*Id.*). The medical records provided by Defendants do not refer to any incidents of excessive force, nor do they say Plaintiff reported being assaulted. (Doc. 60-1 at 89–93). In addition, Defendant Joseph asserts that although he was in the office during the phone call, he did not tackle, slap, or punch Plaintiff. And he did not participate in the escort after the incident. (*Id.* at 101). Additionally, Defendants claim that Defendants Crabtree and Farley were not involved in these events because they did not work on October 9, 2021. (Doc. 60 at 4).

2

After an initial screen, the Court allowed Plaintiff to proceed on his Eighth Amendment excessive force claims against Defendant Joseph for allegedly choking, slapping, and punching him on October 9, 2021. (Doc. 11 at 10; Doc. 44 (adopting Doc. 11)). The Court also allowed Eighth Amendment claims against Defendants Farley, Lindsey, Crabtree, and Beavers to proceed for failing to intervene to protect Plaintiff during this alleged incident. (Doc. 11 at 11; Doc. 44 (adopting Doc. 11)).

Early in this case, identification difficulties arose for certain Defendants. For instance, in his Complaint, Plaintiff listed Defendant Joseph as "Major – Chief of Security – John Doe." (See Doc. 6). In April 2023, Plaintiff identified Defendant Joseph by name, and the Court allowed Plaintiff to amend his Complaint accordingly. (*See* Docs. 12, 13). Also in his Complaint, Plaintiff identified "CO Beavers" as a Defendant, but he did not include a first name. (Doc. 6 at 4). In April 2023, summons were issued, and on May 1, 2023, service for Defendants was accepted by RCI. (See Doc. 27; Doc. 33 at 2). At that time, Defendant Brooklyn Beavers no longer worked at RCI, but a corrections officer named Treavor Beavers did. (Doc. 33 at 2). So, staff at the prison assumed the "CO Beavers" named in this case was corrections officer Treavor Beavers. (Doc. 33 at 2). Early on, Treavor Beavers filed an answer and provided Plaintiff with discovery responses. (Doc. 22; Doc. 50 at 4). Once discovery began, Defendants realized that the "CO Beavers" named in Plaintiff's Complaint was likely a former employee named Brooklyn Beavers because that individual completed an incident report about Plaintiff for October 9, 2021. (Doc. 33 at 3). By December 2023, Defendant Brooklyn Beavers was served and substituted for Treavor Beavers. (Docs. 52, 55, 56).

On September 27, 2023, Defendants filed a Motion for Summary Judgment. (Doc. 39). But just two weeks later, Plaintiff filed a Motion for an Order to Compel Discovery, identifying

several responses he had not yet received.  (Doc. 42).  After that, Plaintiff filed his own Motion for Summary Judgment.  (Doc. 50).  Eventually, the Court stayed briefing on the summary judgment motions to allow the parties to address their ongoing discovery issues.  (Doc. 54).  Once the parties resolved those matters, they requested the "opportunity to supplement or resubmit their dispositive motions."  (Doc. 57 at 2).  The parties also proposed a case schedule, which the Court adopted.  (*See id*.; Doc. 58).

In compliance with that schedule, Defendant filed their Amended Motion for Summary Judgment on March 1, 2024.  (Doc. 60).  Plaintiff's response was due on April 1, but on April 9, Plaintiff called the Court and said he never received a copy of Defendant's Amended Motion.  So, the Court mailed Plaintiff a copy of the Motion and ordered him to file a response on or before May 10.  (Doc. 61).  Plaintiff did so.  (Doc. 62).  But he never filed an amended version of his own Motion for Summary Judgment (Doc. 50), nor did he file a reply to that Motion.  Now, the time to do so has passed.  (*See* Doc. 58 (stating that all amendments or supplements to the parties' dispositive motions were due on March 1, 2024, and all replies were due on May 1, 2024)).

Because Defendants filed an Amended Motion for Summary Judgment, the Court interprets that amended motion as superseding the original motion for summary judgment.  (*See* Docs. 39, 60).  Therefore, only Plaintiff's Motion for Summary Judgment and Defendants' Amended Motion for Summary Judgment are considered.  (*See* Docs. 50, 53, 60, 62, 63).

## II.    STANDARD

Summary judgment is granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Summary judgment is appropriately entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will

bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When a defendant shows there is insufficient evidence to support any element of the plaintiff's claim and moves for summary judgment, the burden shifts to the plaintiff to demonstrate a genuine issue for trial on which a reasonable jury could return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586–87 (1986); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986). Ultimately, the Court asks "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251–52.

## III.   DISCUSSION

### A.   Plaintiff's Motion for Summary Judgment

Plaintiff filed a Motion for Summary Judgment on November 9, 2023. (Doc. 50). Defendants filed a timely response. (Doc. 53). Shortly after that, the Court stayed briefing on dispositive motions to allow the parties to resolve their discovery disputes. (Doc. 54). The parties then agreed to supplement or resubmit their dispositive motions. (Doc. 57). But Plaintiff never filed an amended motion for summary judgment, nor did he file a reply to his original Motion. Though, in his response to Defendants' Amended Motion for Summary Judgment, Plaintiff says he is "moving for summary judgment" in "a separate motion of [his] own." (Doc. 62 at 1). All that said, the Court questions whether Plaintiff intended to withdraw his original Motion for Summary Judgment, renew it, or file a new motion. But the deadline to file a reply or a new motion has passed. (*See* Doc. 58). Out of an abundance of caution, the Court considers the merits of Plaintiff's Motion for Summary Judgment (Doc. 50).

Plaintiff moves for summary judgment because of "admissions made during discovery." (Doc. 50 at 1). While Plaintiff's Motion is not perfectly clear, he seems to argue that Defendants

failed to comply with discovery rules by providing him with amended discovery responses. (*Id.* at 4). So, says Plaintiff, Defendants' responses should be deemed admitted. (*Id.*). These deemed admissions, in Plaintiff's view, mean that Defendant Joseph admitted to using excessive force and Defendant Beavers admitted he failed to intervene. (*Id.* at 13–14). Based on those admissions alone, Plaintiff believes he is entitled to summary judgment.

Plaintiff asserts this argument from different angles. To begin, he says both Defendants' amended discovery responses are improper and late because they did not file motions to amend them. (Doc. 50 at 4–8). He also says the lateness of these amendments prejudiced him because he relied on Defendants' initial responses in preparing his Motion. (Doc. 50 at 4). For example, Plaintiff offers the cover letter for Defendant Joseph's amended discovery responses. (Doc. 50 at 16). In that letter, Defendants' counsel clarifies that "[w]hen [Defendant Joseph] initially review[ed] the complaint, [he] misread the date and was under the impression that he was not at work on the date in question." (*See id.*). Then, the letter says that after Defendant Joseph "realized his mistake," he sent amended interrogatory responses to Plaintiff. (*Id.*). Still more, Plaintiff says that Defendants were dilatory in notifying him that the wrong Defendant Beavers initially provided responses to his discovery requests. (Doc. 50 at 4).

In response, Defendants say that Plaintiff served interrogatories on Defendant Joseph, not requests for admissions, so his responses cannot be deemed admitted. (Doc. 53 at 3). They also say Defendant Joseph's amendments were not improper because he "had a duty to supplement" interrogatory responses under Federal Rule of Civil Procedure 26(e)(1)(A). (Doc. 53 at 3). And Defendants represent that they notified the Court and Plaintiff as soon as they learned of the misidentification of "CO Beavers," and that they acted diligently to provide Plaintiff with proper discovery responses. (*Id.* at 4–5). At base, Defendants assert that any prejudice Plaintiff alleges

6

he suffered due to these amendments is not enough to warrant granting summary judgment. (*Id.* at 3–4).

The Court agrees. While Plaintiff submitted the cover letter, he did not provide Defendant Joseph's actual amended discovery responses. (*See* Doc. 50 at 16). Nor did he provide any information about the discovery requests he sent to Defendant Beavers. (*See generally* Doc. 50 (not clarifying if the requests were interrogatories, requests for admission, or something else)). Still more, the cover letter Plaintiff provided clearly says Defendant Joseph amended responses to interrogatories, not requests for admissions. (*See* Doc. 50 at 16); Fed. R. Civ. P. 36(a)(1)(3) (only stating that requests for admission may be deemed admitted due to a failure to respond).

Further, Defendants were not required to file motions to amend their interrogatory responses as Plaintiff claims. The cases Plaintiff relies upon involved parties who failed to file motions to withdraw deemed admissions. *See Nationwide Fire & Marine Ins. Co. v. Wells*, 301 F. Supp. 3d 1082, 1089–90 (N.D. Ala. 2018) (noting that a defendant failed to file a motion to withdraw his admissions); *Goodson v. Brennan*, 688 Fed. App'x 372, 375 (6th Cir. 2017) (discussing plaintiff's failure to timely respond to requests for admissions); *Stockdale v. Stockdale*, No. 4:08-cv-1773, 2010 WL 681430, at *1 (E.D. Mo. Feb. 22, 2010) (addressing defendant's motion to amend answers to requests for admissions). Such motions are not required to amend interrogatory responses. *See* Fed. R. Civ. P. 36(b) (stating the court may, on motion, permit an admission to be withdrawn or amended); Fed. R. Civ. P. 33 (saying nothing similar for interrogatories).

The more relevant rule here is Federal Rule of Civil Procedure 26(e). Under Rule 26(e), a party who "has responded to an interrogatory . . . must supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or

response is incomplete or incorrect[.]"  Fed. R. Civ. P. 26(e)(1)(A).  That is exactly what Defendants did here.  As discovery progressed and Defendants' counsel found more information on Defendant Joseph's work schedule and Defendant Beavers's identity, counsel amended the discovery responses as required.  While this delay may have made Plaintiff's early litigation efforts more difficult, the amended responses were proper.  And Plaintiff suffered no prejudice.  Plaintiff received amended discovery responses from Defendants Joseph and Beavers by the end of December 2023.  (Doc. 59 at 1).  After that, Plaintiff had an opportunity to refile his summary judgment motion if he wished.  (Doc. 58 at 1 (ordering that the parties may file "amended or supplemental dispositive motions" by March 1, 2024)).  But he did not.

For these reasons, the Court finds that deeming Defendants' discovery responses as admitted would be improper.  Relatedly, because Plaintiff assumes that Defendants' discovery responses are deemed admitted, he says he is entitled to summary judgment.  In Plaintiff's view, these responses mean that Defendant Joseph admitted to assaulting him, and Defendants Beavers and Lindsey admitted to failing to intervene.  (*Id.* at 12–14).  But because the Undersigned found Plaintiff's admissions arguments meritless, those arguments likewise fail.

Discovery responses aside, Plaintiff also argues summary judgment is warranted because Defendants failed to follow certain prison policies.  For example, Plaintiff says Defendants failed to report the alleged assault as required.  (Doc. 50 at 9 (citing Ohio Admin. Code § 5120-9-01(B)(1)(b)).  Plaintiff also argues his medical examination after the incident was improper because the appointment was focused on his mental health, not on the alleged assault.  (*Id.*).  Plaintiff offers these arguments to show he exhausted his administrative remedies.  (*Id.* at 10–12).  As discussed in more detail below, exhaustion of administrative remedies is an affirmative defense upon which Defendants bear the initial burden of proof.  *See Napier v. Laurel Cnty., Ky.*, 636 F.3d

8

218, 225 (6th Cir. 2011). It is not clear if Plaintiff submitted these arguments to respond to Defendants' initial motion for summary judgment, (Doc. 39), or if he believes exhausting his administrative remedies entitles him to relief on the merits of his Eighth Amendment claims. Either way, Plaintiff does not meet the high burden for summary judgment. Therefore, the Undersigned **RECOMMENDS** that his Motion for Summary Judgment (Doc. 50) be **DENIED**.

### B. Defendants' Amended Motion for Summary Judgment

Turning to Defendants' Amended Motion, Defendants say they are entitled to summary judgment for three reasons. To begin, they say Plaintiff failed to exhaust his administrative remedies. (Doc. 60 at 7–11). Next, Defendants assert that Plaintiff cannot prove excessive force under 42 U.S.C. § 1983, so his Eighth Amendment claims fail. (*Id.* at 11–14). Finally, Defendants turn to qualified immunity. (*Id.* at 14–16). In response, Plaintiff argues that he exhausted his administrative remedies, but he does not address the merits of his Eighth Amendment claims or Defendants' assertions of qualified immunity. (*See generally* Doc. 62).

#### 1. *Request to Strike Plaintiff's Response*

As an initial matter, Defendants suggest that the Court should strike Plaintiff's response to their Motion, since he filed it after his original April 1, 2024, deadline and the Court's amended May 10, 2024, deadline. (Doc. 60 at 2 n.1). Though Plaintiff did not file a motion for an extension, he called the Court and represented he never received a copy of the Amended Motion for Summary Judgment from Defendants. (*See* Doc. 61). Defendants do not address Plaintiff's representation in their Motion. (*See* Doc. 60 at 2, n.1–3). Further, the Court gave Plaintiff an extension to file his response until May 10, and Plaintiff mailed his filing to the Court on May 9. (Doc. 62-1 (dated envelope)); *see Jones v. Warden, Ross Corr. Inst.*, No. 2:11-cv-0871, 2013 WL 6230365, at *3 (S.D. Ohio Dec. 2, 2013) (discussing the prison mailbox rule, which instructs that a "pro se

prisoner's filing is deemed filed when it is handed over to prison officials for mailing to the court"). So, in the interest of resolving this case on its merits, the Court **DENIES** Defendants' request to strike Plaintiff's Response.

### 2. Exhaustion of Administrative Remedies

Moving on to the merits of the Amended Motion, Defendants assert that Plaintiff failed to complete the grievance process for his claims. (Doc. 60 at 7–11). "Exhaustion of administrative remedies 'is mandatory under the Prison Litigation Reform Act (PLRA) and . . . unexhausted claims cannot be brought in court.'" *Murray v. Ohio Dep't of Corr.*, No. 1:14-cv-168, 2019 WL 485214, at *13 (S.D. Ohio Feb. 7, 2019) (quoting *Jones v. Bock*, 549 U.S. 199, 211 (2007) (cleaned up)). This exhaustion requirement serves the function of timely notifying prison authorities of prisoners' potential claims, so they may investigate and remedy those claims before prisoners pursue litigation. *See Potee v. Cook*, No. 2:19-cv-5058, 2021 WL 3076396, at *3 (S.D. Ohio July 21, 2021). An inmate must exhaust his claim by "taking advantage of each step the prison holds out for resolving the claim internally and by following the 'critical procedural rules' of the prison's grievance procedure[.]" *Reed-Bey v. Pramstaller,* 603 F.3d 322, 324 (6th Cir.2010) (quoting *Woodford v. Ngo*, 548 U.S. 81, 95 (2006)).

Ohio's prison grievance procedure has three steps. First, "[w]ithin fourteen calendar days of the event giving rise to the complaint, the inmate shall file an informal complaint to the direct supervisor of the staff member, or department most directly responsible for the particular subject matter of the complaint." Ohio Admin. Code § 5120-9-31(J)(1). Second, "[i]f the inmate is dissatisfied with the informal complaint response, or the informal complaint process has been waived, the inmate may file a notification of a grievance with the inspector of institutional services." *Id.* at § 5120-9-31(J)(2). Once received, "the inspector of institutional services shall

provide a written response to the grievance within fourteen calendar days." *Id.* "The inspector may extend the time in which to respond, for good cause, with notice to the inmate"; however, if a disposition has not been rendered twenty-eight days after receiving the grievance, "the complaint will be deemed unresolved, and the inmate may proceed to step three of the process." *Id.* Third, "[i]f the inmate is dissatisfied with the disposition of grievance, the inmate may file an appeal with the office of the chief inspector." *Id.* at § 5120-9-31(J)(3). Once the chief inspector decides the appeal, the prisoner has exhausted his administrative remedies. *See Ball v. Ohio*, No. No. 2:20-cv-1759, 2020 WL 1956836, at *3 (S.D. Ohio Apr. 23, 2020), *report and recommendation adopted*, No. 2:20-cv-1759, 2020 WL 2468742 (S.D. Ohio May 13, 2020).

The PLRA's exhaustion requirement demands compliance with all three steps. *See Reed-Bey*, 603 F.3d at 324. But when prison officials "decline to enforce their own procedural requirements," overlook the untimeliness of a grievance, and consider it on the merits, so will the courts. *Id.* at 325 (collecting cases). Further, "[f]ailure to exhaust administrative remedies under the PLRA is an affirmative defense that must be proved by the defendant." *Lamb v. Kendrick,* 52 F.4th 286, 292 (6th Cir. 2022). So, to be granted summary judgment on exhaustion grounds, Defendants must demonstrate that no reasonable jury could find that the plaintiff exhausted his administrative remedies. *Mattox v. Edelman*, 851 F.3d 583, 590 (6th Cir. 2017).

Defendants present Plaintiff's grievance history for the alleged assault on October 9. (Doc. 60-1 at 97–100). According to this document, Plaintiff submitted an informal complaint on November 30, 2021, over a month after the incident. (Doc. 60-1 at 98). In his complaint, Plaintiff described the alleged assault by Defendant Joseph and explained that he waited until he transferred to another prison to start the grievance process. (*Id.*). Because Plaintiff did not file his complaint

within fourteen days of the alleged assault, his complaint could have been dismissed as untimely. *See* Ohio Admin. Code § 5120-9-31(J)(1). But it was not.

RCI's grievance procedure states that a prisoner is not required to file an informal complaint before a formal grievance when the complaint involves an unreported use of force. (Doc. 60-1 at 16). So, on December 1, 2021, Inspector Todd Diehl converted Plaintiff's informal complaint into a step-two grievance. (Doc. 60-1 at 99). After that, Inspector Diehl informed Plaintiff that more time was needed to address the grievance. (*Id.* at 98). But for several weeks, Plaintiff heard nothing more. On February 9, 2022, since no decision had been made, Plaintiff moved to step three and appealed his grievance. (*Id.*). Assistant Chief Inspector Kelly Riehle then returned Plaintiff's grievance to Inspector Diehl "for disposition." (*Id.*).

Again, Plaintiff waited. Two months later, on April 11, Inspector Diehl finally issued a decision on Plaintiff's grievance. (*Id.*). Though Diehl noted that Plaintiff's informal complaint was untimely, he ultimately resolved Plaintiff's grievance on its merits. (*Id.* ("There is no evidence to support any part of your claim against Major Joseph. Your claim could not be substantiated.")). Plaintiff did not appeal this decision, and he filed this lawsuit on December 12, 2022. (*Id.* at 98–99; Doc. 1).

The crux of the parties' exhaustion dispute lies at this third step. Because Plaintiff never appealed Inspector Diehl's April 11 decision, Defendants say he did not properly grieve the matter. (Doc. 60 at 11). Plaintiff says he did enough. In his briefing, Plaintiff notes that he escalated his grievance to an appeal on February 9, after waiting over two months for a response. (Doc. 62 at 4; Doc. 60-1 at 98–99). Even though he did not appeal Diehl's April 11 decision, Plaintiff says he completed one appeal, and Defendants' requirement that he complete another turns Ohio's grievance procedure into a four- or five-step process. (Doc. 62 at 5–6).

The Court finds a genuine dispute exists regarding Plaintiff's exhaustion of his administrative remedies. Plaintiff completed three steps of the grievance process, even though Defendants say he should have appealed a second time. Still, nothing in Inspector Diehl's April 11 decision indicated Plaintiff could appeal again. (*See* Doc. 60-1 at 98–99). What's more, the prison failed to follow its own procedures and did not respond to Plaintiff's grievance within the required timelines. (*See id*.). Indeed, Plaintiff waited two months without a response before he appealed his grievance, and after that, he waited another two months for a decision. (*Id*.). At base, Plaintiff's actions arguably fulfilled the purpose of the grievance procedure. He put the prison on notice of his potential claims and allowed them ample time to investigate and respond. *See Potee*, 2021 WL 3076396, at *3. And "[w]hen pro se inmates are required to follow agency procedures to the letter in order to preserve their federal claims, we see no reason to exempt the [prison] from similar compliance with its own rules." *Risher v. Lappin*, 639 F.3d 236, 241 (6th Cir. 2011).

On these facts, a reasonable jury could find that Plaintiff completed the three-step process and exhausted his administrative remedies. The Undersigned now turns to the merits of Plaintiff's Eighth Amendment claims.

### 3. *Eighth Amendment Claims*

In his Complaint, Plaintiff alleges that Defendant Joseph slapped, punched, and choked him in violation of the Eighth Amendment on October 9, 2021. (Doc. 6 at 5–6). Further, he says Defendants Crabtree, Farley, Lindsey, and Beavers were present and failed to intervene. (*Id*.). Defendants move for summary judgment, say the alleged assault did not occur, and argue Plaintiff failed to rebut their Motion or show that any genuine dispute remains for trial. (Doc. 60 at 11–14; Doc. 63 at 6–7).

13

"The Eighth Amendment prohibition on cruel and unusual punishment protects prisoners from the unnecessary and wanton infliction of pain." *Rafferty v. Trumbull Cnty., Ohio,* 915 F.3d 1087, 1093–94 (6th Cir. 2019) (quoting *Villegas v. Metro. Gov't of Nashville,* 708 F.3d 563, 568 (6th Cir. 2013)). Still, "not 'every malevolent touch by a prison guard gives rise to a federal cause of action.'" *Wilkins v. Gaddy,* 559 U.S. 34, 37 (2010) (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 1992)). "To make out a claim under the Eighth Amendment, the prisoner must satisfy both an objective and a subjective component." *Rafferty,* 915 F.3d at 1094 (quoting *Williams v. Curtin,* 631 F.3d 380, 383 (6th Cir. 2011)). The objective component requires the pain inflicted to be sufficiently serious that it would be "repugnant to the conscience of mankind." *Id.* (internal quotation omitted). The subjective component requires that the prison official acted with a "sufficiently culpable state of mind." *Id.*

When such force is used, prison officials can also be held liable for failing to intervene to protect prisoners. For an Eighth Amendment claim for failure to intervene, "[an] officer who fails to act to prevent the use of excessive force may be held liable when (1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and means to prevent the harm from occurring." *Batson v. Hoover*, 788 F. App'x 1017, 1021 (6th Cir. 2019) (quoting *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997)).

Here, Defendants move for summary judgment and bear the initial burden of showing there is no genuine issue for trial for Plaintiff's Eighth Amendment claims. *U.S. Bank, N.A. v. Gillham*, 621 F. Supp. 3d 848, 855 (S.D. Ohio 2022) (citing *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004)). Importantly, once they have done so, the burden shifts to Plaintiff, who "must designate the specific facts upon which he relies to establish the existence of a genuine issue for trial." *Keene v. Wellpath Corp.*, No. 3:20-cv-676, 2023 WL 2336935, at *4 (S.D. Ohio Mar.

14

2, 2023) (internal quotation omitted).  In doing so, Plaintiff must "go beyond the unverified pleadings and present some type of evidentiary material" in support of his arguments.  *Claggett v. Wenzler*, 397 F. Supp. 3d 1054, 1064 (S.D. Ohio 2019) (quotation and quotation marks omitted). While Plaintiff "need not cite specific page numbers of the record in support of [his] claims or defenses, 'the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the non-moving party relies.'"  *Easley v. Haywood*, No. 1:08-cv-00601, 2013 WL 210276, at *4 (S.D. Ohio Jan. 18, 2013) (quoting *Guarino v. Brookfield Twp. Tr.*, 980 F.2d 399, 405 (6th Cir. 1992)).

### i.       *Defendants Crabtree and Farley*

Plaintiff's Eighth Amendment claims against Defendants Crabtree and Farley are based on his allegations that they failed to intervene when Defendant Joseph assaulted him.  (Doc. 6 at 5). But Defendants say neither of these Defendants were on-site at RCI on October 9, 2021.  (Doc. 60 at 14).

In support, Defendants provide declarations from Defendants Crabtree and Farley.  Both declare that while they were employed by RCI on October 9, they did not work that day.  (Doc. 60-1 at 2–3, 84–85).  Defendants also submit a declaration from Beth Gorby, a custodian of records at RCI.  Based on her review of the shift logs from October 9, she declares that they did not work that day and were not on-site.  (*Id.* at 4–5).  Defendants further provide the shift log itself, which does not list Defendants Crabtree and Farley as having worked on October 9.  (*Id.* at 6).

With this evidence, Defendants have met their initial burden for summary judgment.  In response, Plaintiff offers no evidence supporting his allegations that these Defendants witnessed the alleged assault and failed to intervene.  Nor does he respond to Defendants' assertions that they were not on-site that day.  (*See generally* Doc. 62).  Indeed, Plaintiff does not mention these

Defendants at all in his briefing.  (*See id.*).  Without more, no reasonable jury could conclude that Defendants Crabtree and Farley worked at RCI that day, let alone failed to intervene as alleged. Therefore, summary judgment should be granted in favor of these Defendants.

ii.      *Defendants Joseph, Lindsey, and Beavers*

Turning to the remaining Defendants, Plaintiff alleges in his Complaint that Defendant Joseph choked, slapped, and punched him while Defendants Lindsey and Beavers held him up. (Doc. 6 at 5–6).  Again, two of these Defendants offer declarations denying the allegations. Specifically, Defendant Lindsey represents he "did not observe Major Joseph physically assault or interact with Inmate Sims on October 9, 2021." (Doc. 60-1 at 85–86).  Defendant Joseph also says he "did not engage in tackling, slapping, or punching Inmate Sims on October 9, 2021." (Doc. 60-1 at 101).  True, Defendant Joseph's affidavit does not address Plaintiff's choking allegation.  (*Id.*). But Defendant Lindsey's declaration states that the two had no physical altercations that day.  (*Id.* at 85–86).

Other evidence provided by Defendants also cast doubt on Plaintiff's allegations.  For instance, Defendants provide Plaintiff's medical records from October 9 and October 12.  (*See id.* at 87–88 (declaration from the prison records custodian describing these records); *id.* at 89–93 (medical records)).  Throughout this case, Plaintiff provided varying accounts of these medical appointments.  In his Complaint, he says he told medical staff about the assault.  (Doc. 6 at 6). Yet, in his own motion for summary judgment, Plaintiff says he did not tell medical staff about the assault because he was afraid of Defendants.  (Doc. 50 at 9–10).  Either way, no assault is described in the records, nor do they discuss any physical injuries.  (*See id.* at 89–93).  Instead, the records detail Plaintiff's mental health after he learned of his brother's death.  For example, the October 9 record describes his thought processes after the phone call, (*Id.* at 91), and the October

16

12 record states that Plaintiff requested to speak with mental health staff about his brother. (*Id.* at 92).

Also attached to the Motion are incident reports for October 9, 2021. In one, Defendant Lindsey writes that he was present during Plaintiff's phone call about his brother. (Doc. 60-1 at 8). The report includes no mention of use of force. (*Id.*). Instead, the report states that Plaintiff was "visually upset" after the call, so Defendant Lindsey and "the escort officer" followed him. (*Id.*). According to the report, Plaintiff pulled away from these individuals and fell to the ground. (*Id.*). Defendant Lindsey says he then called for assistance, escorted Plaintiff to a "holding cage," and took him to medical "with no further issues." (*Id.*). In his declaration, Defendant Lindsey tells the same version of events. (*See id.* at 85–86).

Defendant Beavers writes a similar story in a second incident report attached to the Amended Motion. (*Id.* at 9). Defendant Beavers says that while he was escorting Plaintiff on October 9, Plaintiff pulled away, ran backwards, and fell to the ground. (*Id.*). After that, Defendant Beavers "secured" Plaintiff while another officer "radio[ed] for back up." (*Id.*). The report then says that Defendant Beavers and other officers lifted Plaintiff and took him to medical without any use of force. (*Id.*). Again, this report does not describe any assault by Defendant Joseph, nor does this report say if Defendant Beavers was present during Plaintiff's phone call. (*See id.*).

Defendants' declarations, the medical records, and the incident reports are sufficient to meet their initial burden of showing that either no assault occurred or no evidence supports Plaintiff's allegations. *McDougald v. Dillow*, No. 1:16-cv-1099, 2018 WL 3676084, at *2 (S.D. Ohio Aug. 2, 2018) ("The moving party need not support its motion with evidence disproving the opposing party's claims. Rather, the moving party need only point out there is an absence of evidence supporting such claims." (citing *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996)).

17

Therefore, the burden shifts to Plaintiff to show genuine issues remain for trial. *Kimble v. Wasylyshyn*, 439 F. App'x 492, 495–96 (6th Cir. 2011).

Plaintiff fails to provide the Court with anything to rebut those assertions. For instance, nowhere does he address Defendants' arguments that the assault did not occur. (*See* Doc. 62 (discussing exhaustion only)). Nor does he present any evidence to support his allegations, such as a declaration, Defendants' discovery responses, or even citations to other filings in this case. (*Id.*); *cf. Austin v. Ashcraft*, No. 1:22-cv-159, 2023 WL 6217096, at *2–3 (S.D. Ohio Sept. 25, 2023) (finding a genuine issue remained for trial where plaintiff and defendants offered declarations and affidavits in support of their version of events); *Easley*, 2013 WL 210276, at *5–6 (noting that plaintiff provided an affidavit to support his allegations and that video evidence did not conclusively show his account was untrue). Indeed, Plaintiff hardly mentions the merits of his case at all, saying only that the "core issue [of this case] has been deemed admitted by an operation of federal law[.]" (Doc. 62 at 1–2). As discussed above, no requests for admissions were deemed admitted in this case.

To succeed on his Eighth Amendment claims, Plaintiff must show that Defendant Joseph used excessive force against him and Defendants Beavers and Lindsey failed to intervene. *See Combs v. Wilkinson*, 315 F.3d 548, 556–57 (6th Cir. 2002) (stating what level of force is needed to succeed on an Eighth Amendment claim); *Batson*, 788 F. App'x at 1021 (stating correctional officers can be held liable for failing to intervene when they observe excessive force). And "[w]hile a *pro se* party's arguments are entitled to a liberal construction . . . [a] bald assertion, completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Veeder v. Tri-Cap*, No. 17-cv-11690, 2018 WL 7254610, at *4 (E.D. Mich. Dec. 13, 2018) (internal quotations omitted). Additionally, a *pro se* litigant cannot rest on his pleadings to

survive a properly brought summary judgment motion. *Bates v. O'Connor*, No. 1:23-cv-17, 2024 WL 580924, at *2 (S.D. Ohio Feb. 13, 2024) (citing *Maston v. Montgomery Cnty. Jail Med. Staff Pers.*, 832 F. Supp. 2d 846, 849 (S.D. Ohio 2011)). Nor must the Court conjure arguments on his behalf or search the record for facts supporting his claims. *McDougald v. Dillow*, No. 1:16-cv-1099, 2018 WL 3676084, at *2 (S.D. Ohio Aug. 2, 2018), *report and recommendation adopted*, No. 1:16-cv-1099, 2018 WL 4523955 (S.D. Ohio Sept. 21, 2018); *White v. Erdos*, No. 1:20-cv-101, 2022 WL 474477, at *4 (S.D. Ohio Feb. 16, 2022), *report and recommendation adopted*, No. 1:20-cv-101, 2022 WL 912494 (S.D. Ohio Mar. 29, 2022).

Put simply, Plaintiff fails to address the merits of his claims or offer any materials in the record showing force was used. (*See* Doc. 62). As a result, Defendants' presented facts and evidence are undisputed. Based on the record before the Court, no assault occurred on October 9, so Defendants cannot be held liable for excessive force or failing to intervene. Without more from Plaintiff, his claims cannot survive summary judgment. *See Salyers v. Blue*, No. 4:13-cv-10-JHM, 2015 WL 5098674, at *2–4, 6–7 (W.D. Ky. Aug. 28, 2015) (finding a plaintiff failed to rebut a proper motion for summary judgment where he submitted no exhibits, evidence, or attachments to support his arguments); *White*, 2022 WL 474477, at *4 (granting summary judgment to defendants where plaintiff's response contained "no new information . . . no sworn affidavits or declarations to support his position, nor any additional evidence to overcome Defendants' well-supported Motion for Summary Judgment"); *Phillips v. Sammons*, No. 1:16-cv-1034, 2018 WL 388116, at *4, 5, 5 n.1 (S.D. Ohio Jan. 11, 2018) (finding facts offered by defendants undisputed at the summary judgment phase where the plaintiff failed to respond to the motion and failed to attach documents to his own motion for summary judgment).

19

As a result, the Undersigned **RECOMMENDS** that summary judgment be granted in favor of Defendants. Therefore, the Court need not address Defendants' qualified immunity arguments.

## IV.     CONCLUSION

For the foregoing reasons, the Undersigned **RECOMMENDS DENYING** Plaintiff's Motion for Summary Judgment (Doc. 50) and **RECOMMENDS GRANTING** Defendants' Amended Motion for Summary Judgment (Doc. 60). The Undersigned further **DENIES** Defendant's original Motion for Summary Judgment (Doc. 39) as **MOOT**. Defendant's Motion for an Order to Compel Discovery (Doc. 42) is **TERMINATED**, as the parties resolved their dispute.

## **Procedure on Objections**

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a *de novo* determination of those portions of the Report or specific proposed findings or recommendations to which objection is made. Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence, or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo* and also operates as a waiver of the right to appeal the decision of

the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

     IT IS SO ORDERED.


Date: August 2, 2024                 /s/ Kimberly A. Jolson
                                      KIMBERLY A. JOLSON
                                      UNITED STATES MAGISTRATE JUDGE